530 U.S. 1021 (2000)
UNITED STATES
v.
ALASKA
No. 84, Orig.
United States Supreme Court.
Decided June 19, 1997.
Decree entered June 29, 2000.
ON BILL OF COMPLAINT
The joint motion for entry of a decree is granted.
DECREE
On June 18, 1979, the Court granted the United States leave to file a bill of complaint setting out a dispute over the rights of the United States and the State of Alaska to offer lands in the Beaufort Sea for mineral leasing. 442 U. S. 937. The Court appointed a Special Master to direct subsequent proceedings and to submit such reports as he deemed appropriate. 444 U. S. 1065 (1980). The Court later referred to the Master the State of Alaska's motion for leave to file a counterclaim seeking a decree quieting its title to coastal submerged lands within two federal reservations, the National Petroleum Reserve-Alaska and the Arctic National Wildlife Range (now known as the Arctic National Wildlife Refuge). 445 U. S. 914 (1980).
From 1980 through 1986, the Master oversaw extensive hearings and briefing. On May 20, 1996, the Court received and ordered filed the Special Master's Report. 517 U. S. 1207. On June 19, 1997, this Court overruled Alaska's exceptions, sustained the United States' exception, and directed the parties to prepare and submit an appropriate decree, consistent with the Court's decision, for the Court's consideration. 521 U. S. 1. The parties have prepared a proposed decree and have recommended its entry by the Court.
Accordingly,
*1023 IT IS ORDERED, ADJUDGED, AND DECREED:
A. Alaska's Motion for Leave to File a Counterclaim.
The motion of the State of Alaska for leave to file a counterclaim is granted.
B. The Federal-State Boundary Marking the Seaward Extent of the State of Alaska's Submerged Lands Act Grant.
1. Except as provided in Paragraph C below, as against the State of Alaska and all persons claiming under it, the United States has exclusive rights to explore the area lying seaward of the line described in Exhibit A hereof and to exploit the natural resources of said area. The State of Alaska is not entitled to any interest in such lands, minerals, and resources, except as may be provided by § 8(g) of the Outer Continental Shelf Lands Act, 67 Stat. 468, 43 U. S. C. § 1337(g), and Paragraph C of this Decree. The State of Alaska, its privies, assigns, lessees, and other persons claiming under it are hereby enjoined from interfering with the rights of the United States in such lands, minerals, and resources.
2. Except as provided in Paragraph C below and except within the boundaries of the National Petroleum ReserveAlaska and the Arctic National Wildlife Refuge, and subject to the exceptions set out in § 5 of the Submerged Lands Act, 67 Stat. 32, 43 U. S. C. § 1313, as against the United States and all persons claiming under it, the State of Alaska has exclusive rights to explore the area lying shoreward of the line described in Exhibit A hereof and to exploit the natural resources of said area. The United States is not entitled to any interest in such lands, minerals, and resources except as may be provided by Paragraph C of this Decree. The United States, its privies, assigns, lessees, and other persons claiming under it are hereby enjoined from interfering with the rights of the State of Alaska in such lands, minerals, and resources.
*1023 3. The boundary described in Exhibit A shall remain fixed for purposes of the Submerged Lands Act.
C. Distribution of Revenues in Escrow and Administration of Leases.
1. The United States and the State of Alaska shall resolve accounting and administration issues arising from the past issuance of offshore oil and gas leases in disputed areas based on the following principles:
a. Existing and Former Leases That Are Subject to § 7 Agreements. During the course of this litigation, the United States and the State of Alaska entered into agreements under § 7 of the Outer Continental Shelf Lands Act, 43 U. S. C. § 1336, and Alaska Stat. §§ 38.05.020 and 38.05.137, to allow mineral leasing of submerged lands in disputed areas. Under the terms of those "§ 7 Agreements," lease revenues are held in income-producing escrow accounts for distribution based on the outcome of the litigation. No later than 180 days after entry of this Decree, the funds held in escrow accounts shall be distributed in accordance with the distribution provisions contained in the § 7 Agreements. The United States and the State of Alaska shall carry out all applicable provisions and terms of the § 7 Agreements and shall administer the leases in accordance with the provisions therein.
b. Existing and Former Leases That Are Affected by the Fixed Federal-State Boundary Described in Exhibit A. The United States and the State of Alaska have issued mineral leases in offshore areas that were not in dispute on the date of lease issuance and are therefore not subject to § 7 Agreements. Those leases may be intersected, however, by the fixed federal-state boundary described in Exhibit A, which is based upon surveys conducted after the lease dates. Leases existing on the *1024 date of this Decree and not covered by § 7 Agreements, but intersected by the fixed federal-state boundary described in Exhibit A, shall continue to be administered by the original lessor, who shall have the exclusive right to all past and future revenues from the lease. Following the expiration, relinquishment, or termination of such leases, the rights to explore and exploit the natural resources within the area that was leased shall be determined solely in accordance with Paragraph B of this Decree. The distribution of revenues from former leases that expired before the date of this Decree, that were not covered by § 7 Agreements, but that would have been intersected by the fixed federal-state boundary described in Exhibit A, shall not be affected by the fixing of the federal-state boundary.
c. Existing and Former Leases That Are Both Sub- ject to § 7 Agreements and Affected by the Fixed Federal-State Boundary Described in Exhibit A. In the event that an existing lease is subject to a § 7 Agreement and is intersected by the fixed federal-state boundary described in Exhibit A, the funds held in escrow shall be distributed, and the lease shall be administered, in accordance with the provisions of the § 7 Agreement. Following the expiration, relinquishment, or termination of the lease, the rights to explore and exploit the natural resources within the area that was leased shall be determined solely in accordance with Paragraph B of this Decree. The distribution of revenues from former leases that expired before the date of this Decree, that were subject to § 7 Agreements, but that would have been intersected by the fixed federal-state boundary described in Exhibit A, shall not be affected by the fixing of the federal-state boundary.
2. This Decree shall not affect the rights or obligations of the United States or the State of Alaska with respect to *1025 its lessees or third parties, whether arising from the § 7 Agreements or otherwise. This Decree shall not affect any rights or obligations arising under present or future unitization, operating, enhanced recovery, commingling, or other similar agreements between the parties or with others.
D. The Coastal Boundary of the National Petroleum Reserve-Alaska.
The coastal boundary of the National Petroleum ReserveAlaska is a continuous line, as described in Executive Order No. 3739A (1923), in Presidential Executive Orders (1980) (microform, reel 6), that begins at the western bank of the Colville River and follows the highest high water mark westerly, extending across the entrances of small lagoons, including Peard Bay, Wainwright Inlet, the Kuk River, Kugrua Bay and River, and other small bays and river estuaries, and following the ocean side of barrier islands and sandspits within three miles of shore and the ocean side of the Plover Islands, to the northwestern extremity of Icy Cape, approximately 70° 21[H11541] N., 161° 46[H11541] W.
E. The Coastal Boundary of the Arctic National Wildlife Refuge.
The coastal boundary of the Arctic National Wildlife Refuge is a continuous line, as described in Public Land Order No. 2214, 25 Fed. Reg. 12598 (1960), that begins at the intersection of the International Boundary line between the State of Alaska and Yukon Territory, Canada, with the line of extreme low water of the Arctic Ocean in the vicinity of Monument 1 of said International Boundary line, and follows the line of extreme low water westerly, extending across the entrances of lagoons such that all offshore bars, reefs and islands, and lagoons that separate them from the mainland, are part of the Refuge, to Brownlow Point, at approximately 70° 10[H11541] N., 145° 51[H11541] W.
*1026 F. Resolution of Disputes Respecting the Coastal Boundaries of the National Petroleum Reserve-Alaska and the Arctic National Wildlife Refuge.
The coastal boundaries of the National Petroleum ReserveAlaska and the Arctic National Wildlife Refuge are ambulatory and will therefore migrate as a result of changes in relevant physical features. The United States and the State of Alaska may resolve disputes arising from those changes through negotiation, through alternative methods of dispute resolution, or through invocation of this Court's retained jurisdiction in accordance with Paragraph G. The United States and the State of Alaska may jointly submit to this Court, for entry as a supplement to this Decree, any agreement respecting the location of the coastal boundary of the National Petroleum Reserve-Alaska or of the Arctic National Wildlife Refuge.
G. Retention of Jurisdiction.
The Court retains jurisdiction to entertain such further proceedings, enter such orders, and issue such writs as from time to time may be determined necessary or advisable to effectuate and supplement this Decree and the rights of the respective parties. In all other respects, this Decree is final.
EXHIBIT A